462, (1925).]          Opinion of the Court.

refused, and judgment entered in favor of the plaintiff on the verdict.

The evidence was conflicting and susceptible of opposite conclusions, but all the testimony was fairly submitted by the trial judge, and on consideration, the motion for a new trial was again refused, in an opinion which convinces us that no substantial error was committed in any of the matters of which the defendant complains.

We agree in this conclusion, and the judgment is affirmed for the reasons given by the trial judge.

---

## Mayer *v.* County of Franklin, Appellant.

*Constitutional law—Act of April 21, 1911, P. L. 76—Constitutionality—Title—Sheriffs—Costs.*

The Act of April 21, 1911, P. L. 76, relating to the costs to be charged by a sheriff is constitutional and is not in violation of article III, section 6, of the Constitution of Pennsylvania.

The sheriff under such act is entitled to 50 cents for each commitment in any criminal matter and 50 cents for each discharge in any criminal matter. He is not entitled to a fee for commitment of persons to the county jail because of insolvency, or for persons committed by the state health officer for treatment of communicable diseases, or for commitments of suspicious characters.

Argued October 29, 1924. Appeal, No. 255, Oct. T., 1924, by defendant, from judgment of C. P. Franklin Co., Feb. T., 1924, No. 111, in favor of plaintiff in the case of Jacob H. Mayer v. County of Franklin. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Amicable action of assumpsit and case stated, upon appeal by defendant from the report of the county auditors in settlement of accounts of Jacob H. Mayer,

464 MAYER *v.* FRANKLIN COUNTY, Appellant.

Sheriff, for the year ending January 1, 1923. Before
GILLAN, P. J.

The facts are stated in the following opinion of the
court below:

By the case stated it is agreed:

First.—Jacob H. Mayer was sheriff of the County of
Franklin from the first Monday of January, 1920, to the
first Monday of January, 1924.

Second.—During the year 1922 there were two hun-
dred and fifty-eight prisoners, either committed to or
discharged from the county jail charged with indictable
offenses; and seven hundred and sixty-eight prisoners,
either committed to or discharged from the county jail
charged with the following offenses, or committed under
the following circumstances, to wit:

| | |
|---|---|
| Drunk and disorderly | 75 |
| Suspicious characters | 22 |
| Disorderly conduct | 17 |
| Insolvency | 1 |
| Process issued by the court | 6 |
| Committed by State Health Officer for treatment for communicable diseases | 46 |
| Surety of the peace | 10 |
| Desertion and maintenance | 24 |
| Trespassing on railroad trains | 219 |
| Vagrancy | 339 |
| Gambling | 9 |

For which the plaintiff claimed and the county audit-
ors allowed him the sum of fifty cents each, amounting
to five hundred and thirteen dollars ($513).

Third.—If the court be of opinion that the Act of
Assembly approved April 21, 1911, P. L. 76, entitled
"An Act to amend part of the first section of an act ap-
proved the 11th day of July, A. D. 1901, entitled 'An Act
to regulate and establish the fees to be charged by sher-
iffs in this Commonwealth, and to provide for the tax-
ation and collection of the same,' by requiring sheriff's

fees for committing and for discharging prisoners to be paid by the county," and which provides as follows:

"For each commitment in any criminal matter, fifty cents, to be paid by the county.

"For discharging prisoners in any criminal or civil case, fifty cents, to be paid by the county,"
is constitutional and that said act imposes upon the defendant the duty to pay for all of the commitments and discharges mentioned in the second paragraph hereof, whether for indictable offenses or not, then judgment to be entered for the plaintiff in the sum of five hundred and thirteen dollars, with costs of suit.

Fourth.—If the court be of opinion that the Act of 1911, supra, is unconstitutional and that there is no law imposing upon the county the duty to pay for commitments and discharges in any of the above-mentioned cases, then judgment to be entered for the defendant.

Fifth.—If the court be of opinion that the Act of 1911, supra, is constitutional, and if he be also of the opinion that said act imposes upon the county the duty to pay only for commitments and discharges in indictable offenses, then judgment to be entered for the plaintiff for the sum of one hundred and twenty-nine dollars, with costs of suit.

Sixth.—If the court be of opinion that it is the duty of the defendant under the law to pay for some but not for all of the commitments and discharges hereinbefore referred to, for offenses not indictable, then judgment to be entered for the plaintiff for such amount as shall, in the opinion of the court, be proper, in addition to the sum mentioned in the fifth paragraph hereof.

The county appealed from the report of the auditors. No specifications of error in this report have been filed. Of course it is not necessary to cite authority to support the statement that no part of the plaintiff's claim can be allowed against the county unless there is a statute imposing liability on the county. The plaintiff bases his right

Opinion of the Court below. [85 Pa. Superior Ct.

to recover on the provisions of the statute of 21 April, 1911, P. L. 76. The statute reads as follows:

"An Act—To amend part of the first section of an act, approved the eleventh day of July, Anno Domini one thousand nine hundred and one, entitled 'An Act to regulate and establish the fees to be charged by sheriffs in this Commonwealth, and to provide for the taxation and collection of the same,' by requiring sheriff's fees for commitments and for discharging prisoners to be paid by the county.

"Section 1. Be it enacted, &c., That that portion of section one of an act, approved the eleventh day of July, Anno Domini one thousand nine hundred and one, entitled 'An Act to regulate and establish the fees to be charged by sheriffs in this Commonwealth, and to provide for the taxation and collection of the same,' which reads as follows:—

'For each commitment in any criminal matter, fifty cents. 'For discharging prisoners in any criminal or civil case, fifty cents'—is hereby amended so as to read:—

For each commitment in any criminal matter, fifty cents, to be paid by the county.

For discharging prisoners in any criminal or civil case, fifty cents, to be paid by the county.

The defendant contends, however, that the act is in violation of article III, section 6, of the Constitution, which reads as follows:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

In passing upon this same question under exactly the same circumstances, in No. 44 of October term, 1921, we said: "By the Act of 11 July, 1901, P. L. 663, entitled an Act 'To regulate and establish the fees to be charged by sheriffs in this Commonwealth and to provide for the tax-

ation and collection of the same,' it is provided by the first section, which consists of more than three pages of the pamphlet in which it is published, what fees are to be received by the sheriff for services rendered. That relating to the committing and discharging of prisoners is founded in one clause in these words: 'For each commitment in any criminal matter, fifty cents; for discharging prisoners in any criminal or civil case, fifty cents!'" This of course was amended by the Act of 1911, which is above set forth. "Counsel for defendant cites as authority for his contention that this act offends against the provisions of the Constitution above cited, Oil City and Petroleum Bridge, 9 Dist. Reports 110; Barrett's Appeal, 116 Pa. 487. He insists that the act is entirely void. Of course, if the act does offend against the Constitution, the foundation of the plaintiff's claim falls and we must enter judgment for the defendant. The presumption is in favor of the constitutionality of the act; the burden is on him who alleges the invalidity of the act to show it. He must show a clear, palpable, and plain violation of the Constitution so plainly as to leave no doubt: R. R. Co. v. Riblet, 66 Pa. 169. The article in the Constitution above referred to was intended to prevent the mischief occasioned by ignorant, misleading and deceptive legislation: Pittsburgh's App., 191 Pa. 297. The act under consideration is an act complete in itself. No one, in reading it, could be deceived or misled as to its contents or meaning. The purpose of the act was of course to make the county responsible for the fees therein mentioned. The title gives plain notice of this intention. The amendment, as it is, expresses the intention very clearly. There can be no possible lack of information; there can be no misinterpretation. We are very firmly convinced that the act of assembly does not violate any provision of the Constitution."

We are pointed to no deliverance of any appellate court to show us that we were wrong when we delivered that opinion, and until there is such deliverance we can-

468 MAYER *v.* FRANKLIN COUNTY, Appellant.

not reverse the judgment there entered. The act does recite and reënact the part amended. The amendment simply adds to the clauses found in the original act the words "to be paid by the county." The act being constitutional, the county is liable for the charges if the same were rendered in a criminal matter. The contention of the defendant further is that the commitments and discharges were not rendered in criminal matters. The definition of crime is perhaps not easy. In Ruling Case Law, vol. 8, pp. 51 and 52, it is said, in speaking of crime: "Perhaps it can best be defined as any act or omission which is forbidden by law, to which a penalty is annexed, and which the State prosecutes in its own name."

We must consider the question in the light of the surrounding circumstances. The plaintiff here was the sheriff of the county and the keeper of the jail. It was his duty under the law to receive persons legally committed to him, not for him to investigate each one to ascertain whether or not the commitment was one in a criminal matter or in an indictable offense. The jail being maintained for the purpose of confining their prisoners charged with crime, as well as persons convicted of crime, the presumption is that sending them to the county jail was in a criminal matter. We have simply the agreed facts that the persons committed were charged with certain offenses named in the agreement, "or committed under the following circumstances." What do the words "criminal matter" convey or mean to the ordinary person? Of course criminal matter means connected with crime or violation of law. Courts ought not be required to search the statutes or precedents as with a fine tooth comb to determine the meaning of the words "criminal matter." The common-sense, plain meaning of the words indicates what it means as established in this statute, which means just what it says and applies to offenses against the law, whether those offenses be great or small. There are some charges laid

here in matters which are not of themselves criminal. We have a charge for committing or discharging twenty-two suspicious characters. We have no knowledge that one can be designated a criminal because he is a suspicious person, nor do we have knowledge that one, by becoming a bankrupt, can be denominated a criminal. It may be that a bankrupt proceeding would be a violation of the law, but certainly we cannot find that from this statement; nor do we have any knowledge that, by contracting a communicable disease, one necessarily becomes a criminal. We find no authority in the law to charge the county for a commitment or discharge of these persons, as set forth in this second clause in the agreement of the case stated. It may be that there was a violation of the law in these cases, but there is no evidence before us that there was any such violation: Suspicious characters, 22; insolvency, 1; committed by state health officer for treatment for communicable diseases, 49; total 69. It is not a question whether or not the plaintiff is to be paid for these services, but whether the county shall pay for them. The statute does not designate criminal matters as consisting only of indictable offenses. Most certainly it cannot be taken to mean that, so far at least as the compensation of the sheriff is concerned. Being of opinion therefore, that the statute is constitutional, that the words "criminal matter" refer to all matters contained in the second clause of the case stated, except suspicious characters, insolvency, and communicable diseases, sixty-nine, the plaintiff is entitled to judgment in the sum of five hundred and thirteen dollars ($513), less sixty-nine at fifty cents, or $34.50; leaving a balance due him for four hundred and seventy-eight and 50-100 dollars ($478.50).

Therefore, now, this 22d day of July, 1924, it is ordered that judgment be entered in favor of the plaintiff, Jacob H. Mayer, and against the defendant, the County of Franklin, in the sum of four hundred and seventy-eight and 50-100 dollars ($478.50), with costs of suit.

Defendant appealed.

*Error assigned* was the decree of the court.

*J. R. Ruthrauff*, and with him *W. O. Nicklas*, for appellant.

*G. W. Atherton*, for appellee.

PER CURIAM, February 27, 1925:

The opinion of the court below in disposing of the case considers and correctly disposes the questions raised by the assignments of error.

We affirm the judgment on the opinion of the learned court below.

---

# Tearpoak v. Tearpoak, Appellant.

*Donor—Donee—Gift inter vivos—Money in bank—Actual or constructive delivery.*

On interpleader to determine the title to certain money on certificate of deposit, it appeared that the depositor had made a deposit of three thousand dollars in the name of himself, his wife and his son. Subsequently the wife died and the depositor drew out, on his own signature, a part of the money. The son in the meantime had signed a signature card, but exercised no other authority over the deposit. He claimed, however, that he was entitled to one-third of the original amount as a gift from his father.

*Held*, that nothing had been done which gave the complete control of the property to the son and that there was no gift and that the money belonged to the depositor.

To constitute a valid gift inter vivos, two essential elements must combine: An intention to make a gift then and there, and such actual and constructive delivery at the same time to the donee as divests the donor of all dominion over the subject and invests the donee therewith.

Argued May 6, 1925. Appeal, No. 225, April T., 1925, by defendant, from judgment of C. P. Allegheny Co.,